**WRIGHT v. WEAVER BROS., INC., OF MARYLAND.**

Civil Action No. 2140.

District Court, D. Maryland.

Aug. 11, 1944.

Bradley T. J. Mettee, Jr., of Baltimore, Md., for plaintiff.

John J. Neubauer, of Baltimore, Md., for defendant.

COLEMAN, District Judge.

This is a suit for relief by a declaratory judgment pursuant to Section 274d of the Judicial Code, 28 U.S.C.A. § 400, under the provisions of the Army Reserve and Retired Personnel Service Law of 1940, 50 U.S.C.A.Appendix, § 403. The proceeding is now before the Court on motion of defendant to dismiss the complaint on the ground that it fails to state a claim against the defendant upon which relief can be granted. The motion is based upon two principal grounds, (1) that the action is prematurely brought and no declaratory judgment can be given at the present time; and (2) that Section 403 of the Army Reserve and Retired Personnel Service Law of 1940 does not afford plaintiff the relief for which he contends because of a supplemental agreement which he made with defendant.

The material facts as set forth in the bill of complaint, and which we must treat as true for the purposes of the present motion, are as follows: On February 18, 1937, the defendant, Weaver Bros., Inc., a Maryland real estate corporation, with offices in Baltimore, by formal written agreement with plaintiff, Carroll Wright, a resident of Baltimore, employed the plaintiff to be its general manager and in active charge of its real estate and mortgage loan business at an annual salary of $3600 "payable in con-

venient installments" and also agreed that plaintiff should receive an annual allowance, payable in the same manner, of $600, towards the maintenance and upkeep of an automobile to be used by him in furtherance of his duties in connection with defendant's business. In addition to this salary and allowance, it was agreed that the defendant should also pay the plaintiff, for his services, certain specified percentages of the defendant's annual net income from the operation of its business, to be computed in the manner set forth in the agreement.

The period of plaintiff's employment was specified in the agreement "to continue, with the exceptions hereinafter specified, until the expiration of a period of six (6) months after delivery by either party hereto to the other of a written notice of termination." The exceptions referred to relate to events that have not occurred, i. e., (1) discontinuance of defendant's business, and (2) plaintiff's death.

Plaintiff entered upon his duties with the defendant which he performed to defendant's satisfaction until on or about December 14, 1940, when plaintiff, being a member of a reserve component of the United States Army, was duly ordered and assigned to active duty and has since continued on such duty. On the aforementioned date, plaintiff and defendant, because of the former's entrance into the military service, made a supplemental written agreement which consisted, except for the customary preambles, etc., merely of the two following paragraphs:

"So long as said agreement of February 18th, 1937, remains in full force and effect and the party of the second part remains on active duty in the United States Army, the party of the first part will pay to the party of the second part, in lieu of the salary and automobile allowance provided for him in said agreement, the sum of Fifty Dollars ($50.00) each month, payable on or about the first day of each month beginning January 1st, 1941.

"IN ALL RESPECTS, except as hereinbefore expressly stated, the said agreement of February 18th, 1937, is hereby ratified and confirmed." (The first three words appear in capital letters, as here written.)

Prior to the making of this supplementary agreement, that is, effective August 27, 1940, Congress enacted the so-called Army Reserve and Retired Personnel Service Law of 1940, 50 U.S.C.A.Appendix, §§ 401–405. Briefly stated, the purpose of this law, operating in conjunction with other war-time legislation to which more specific reference is hereinafter made, is to grant, through a moratorium or stay, the protection of the civil rights of those serving in our Armed Forces during the period of such service, and more particularly to provide for reasonable assurance of employment after the expiration of same—a significant factor in the maintenance of the morale of our Armed Forces so necessary to the success of their war efforts and the consequent security of our citizens as a whole.

Among the provisions of this war-time legislation, and the only provisions with which we here need to be directly concerned, are the following:

"(a) Any member of any reserve component of the land or naval forces who is on active duty or who may be assigned to active duty and who, in the judgment of those in authority over him, satisfactorily completes such active duty, and any person so ordered into the active military service of the United States who, in the judgment of those in authority over him, satisfactorily completes the period of service required under this joint resolution, shall be entitled to a certificate to that effect upon the completion of such active duty or such period of service, which shall include a record of any special proficiency or merit attained. In addition, each such person who is assigned to such active duty or ordered into such active military service shall be given a physical examination at the beginning of such active duty or service; and upon the completion of the period of such active duty or service, each such person shall be given another physical examination and, upon the written request of the person concerned, shall be given a statement of medical record by the War Department: Provided, That such statement shall not contain any reference to mental or other conditions which in the judgment of the Secretary of War or the Secretary of the Navy would prove injurious to the physical or mental health of the person to whom it pertains.

"(b) In the case of any such person who, in order to perform such active duty of such service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within

forty days after he is relieved from such active duty or service—

\* \* \* \* \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \*

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of active military service, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was ordered into such service, and shall not be discharged from such position without cause within one year after such restoration.

"(d) In case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c), the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specificially require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. The court shall order a speedy hearing in any such case and shall advance it on the calendar. Upon application to the United States district attorney for the district in which such private employer maintains a place of business, by any person claiming to be entitled to the benefits of such provisions, such United States district attorney, if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition or other appropriate pleading and the prosecution thereof to specifically require such employer to comply with such provisions: Provided, That no fees or court costs shall be taxed against the person so applying for such benefits."

On January 14, 1942, defendant sent plaintiff a notice of cancellation of his employment, this notice stating that: "In accordance with the terms of the contract agreement dated February 18, 1937, by and between Weaver Bros. Inc. of Maryland and yourself, you are hereby notified that the aforesaid contract will terminate on June 30th, 1942." Plaintiff did not agree to such cancellation, and on February 17th, 1942, defendant again served upon plaintiff another formal notice of like tenor, reciting: "This notice is given at the direction of our Board of Directors and pursuant to the provision contained on the first page of the contract that your employment should continue 'until the expiration of a period of six (6) months after the delivery by either party hereto to the other of a written notice of termination.'" Plaintiff, likewise, refused to accept this second notice of termination of his employment. Thereupon, defendant sent a statement to plaintiff showing the sum of $1549.90 as the balance (including percentage of profits from defendants' business) due plaintiff for the period from January 1 to August 20, 1942, plaintiff having been paid $50. per month through June, 1942, and defendant offered, by an accompanying letter, to pay this amount to the plaintiff, provided he would execute a release of all further rights under his employment contract. This, the plaintiff refused to do, asserting that defendant was attempting to deprive him, contrary to the provisions of the Army Reserve and Retired Personnel Service Law of 1940, above quoted, of the right to return to his position in the defendants' business upon the termination of his service with the Armed Forces, and more specifically, that as a result of this legislation, passed subsequent to the making of the original employment contract, the right to terminate provided for therein was annulled, and such annulment must be read into the supplemental agreement of December 14, 1940.

Accordingly, in the present suit, plaintiff seeks a declaratory judgment to the effect that the employment contract of February 18, 1937, still remains in full force and effect, and that the defendant must comply therewith and pay to the plaintiff or into the Registry of this Court, such sums as are or may become due the plaintiff thereunder.

The sum and substance of plaintiff's contention is that the statute has impressed upon every employment contract (other than for a temporary position) an additional and

598

controlling provision that the employee shall not be discharged without cause within one year after he has been restored to his former position or to one of like seniority, and that plaintiff could not be discharged while in the service, even though he had agreed to the contrary.

On the other hand, defendant, by its motion to dismiss the complaint, contends, in essence, that the statute does not, and was not intended by Congress to, apply to a situation in which the parties have expressly agreed upon their respective rights during or after the period of military service of the party concerned; that it would be very unjust to permit plaintiff to repudiate the supplemental agreement of December 14, 1940, made by him with his active duty clearly in mind on the very day when he entered upon same, and which, by reciting that "IN ALL RESPECTS, except as hereinbefore expressly stated [i. e. change in total amount of compensation to plaintiff], the said agreement of February 18th, 1937, is hereby ratified and confirmed," intended to preserve the original right to terminate the employment. Also, defendant contends that in any event the present proceeding is premature because Section 403 of the Act above quoted, by its express terms, imposes certain conditions precedent to the reemployment of a member of any reserve component of the Armed Forces on active duty before such person can demand reemployment by his employer. That is to say, the present plaintiff has not received, and cannot yet receive the prerequisite certificate of period of service satisfactorily completed, or the medical examination; he cannot yet make the application for reemployment as prescribed; and also, the time has not come to determine whether "the employer's circumstances have so changed as to make it impossible or unreasonable" for the plaintiff to be restored to his former position, or to one of like seniority.

■ The questions here presented do not appear to have been heretofore adjudicated in any reported decision. With respect to the first ground upon which defendants' motion to dismiss is based, namely, that this court should not assume jurisdiction because the action is prematurely brought and no declaratory judgment can be given at the present time, we are satisfied that this Court should assume jurisdiction. Jurisdictional requirements are met as. respects the amount in controversy, and the plaintiff bases his claim upon rights alleged to be given him by a law of the United States. Judicial Code, § 24, 28 U.S.C.A. § 41. The suit is not premature because, in addition to plaintiff's claim with respect to money due him, which alone would appear to be sufficient to warrant assumption of jurisdiction at this time, plaintiff is questioning the right of the defendant to deny him reemployment, and rights incident thereto, by completely cancelling the employment contract. In short it would be inequitable for plaintiff to be required to wait until his return to civil life before having an adjudication as to just what his status is under the contract, both as respects the period of his military service, and also thereafter.

■ However, we do not think it is sufficient to say that the defendant had no right to terminate the contract on the theory that the supplemental agreement of December 14, 1940, must be interpreted as impliedly intended to apply to the entire period that the plaintiff might be in the armed forces, since plaintiff's consent to the reduction made in his compensation by this supplemental agreement was the consideration on the one hand, and the promise to pay the reduced amount while the plaintiff was in the armed forces was the consideration on the other, because we cannot ignore—which such a theory does—the express language contained in this supplemental agreement which is that "IN ALL RESPECTS, except as hereinbefore expressly stated, the said agreement of February 18, 1937, is hereby ratified and confirmed." If the plaintiff had intended that the cancellation clause of the original agreement should have no application to the new agreement he could have insisted upon a clause to this effect. That he did not do so may have been the result of oversight, but presumably was more likely due to the fact that the effect of the recently enacted Army Reserve and Retired Personnel Service Law of 1940, for which he now, as we think, erroneously contends, had not occurred to him. There is no ambiguity in the words employed in the supplemental agreement. Nor is there any claim by plaintiff that it was not drawn precisely as both parties intended.

As for the argument that since the original agreement was made prior to the passage of the Army Reserve and Retired Personnel Service Law of 1940, the Act when later passed nullified the cancellation clause in the original agreement, because

the two are inconsistent, and that therefore the supplemental agreement purported to do, and could in fact do, no more than reaffirm such force and effect as was attributable to that clause in the original agreement after the Act was passed, we believe such argument is completely overcome by the fact that it would be entirely contrary to sound statutory interpretation to construe the Act as intending, merely by implication, to nullify an express agreement which, as here, a person in the armed forces has made with his employer, freely and without any compulsion or misrepresentation, at the time he enters upon his military duties.

Provisions identical with those with which we are here concerned, are also in the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 308; and the Civilian Reemployment of Members of the Merchant Marine Act, 50 U.S.C.A.Appendix, § 1472. Also it is of significance that the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A.Appendix, §§ 510–590, in dealing with the effect of that Act upon the rights, remedies, etc., of its beneficiaries, by virtue of written agreements entered into after commencement of military service, contains the following (50 U.S.C.A.Appendix, § 517):

"*Nothing contained in this Act shall prevent*—

"*(a) the modification, termination, or cancellation of any contract,* lease, or bailment or any obligation secured by mortgage, trust deed, lien, or other security in the nature of a mortgage, * * * *pursuant to a written agreement of the parties thereto* (including the person in military service concerned, or the person [draftee] to whom section 106 is applicable, whether or not such person is a party to the obligation), or their assignees, *executed during or after the period of military service of the person concerned or during the period specified in section 106.*" (Italics inserted.)

It will thus be seen that the Soldiers' and Sailors' Civil Relief Act of 1940 expressly removed from the operation of that Act, contractual relationships had with one in the armed forces, such as here involved. We recognize the fact that the basic purpose of the Soldiers' and Sailors' Civil Relief Act of 1940 was merely to suspend enforcement of certain civil liabilities of persons serving in the military and naval establishments and the Coast Guard; that the Army Reserve and Retired Personnel

Service Law of 1940 does not contain a provision such as the one just quoted, and that, by fixing the right to reemployment after completion of service, it deals with substantive rather than procedural rights. However, under the Army Reserve and Retired Personnel Service Law of 1940, 50 U.S.C.A.Appendix, § 404, the benefits of the Soldiers' and Sailors' Civil Relief Act of 1918, 50 U.S.C.A.Appendix, §§ 101–165, were expressly extended to the beneficiaries under the first mentioned Act, effective until October 17, 1940, when the provision granting this extension was superseded by the Soldiers' and Sailors' Civil Relief Act of 1940. See 50 U.S.C.A.Appendix, § 585. Thus it would appear to be an entirely reasonable conclusion from the evolution of these closely inter-related pieces of legislation, that although the Army Reserve and Retired Personnel Service Law of 1940 does not contain any express provision such as does the Soldiers' and Sailors' Civil Relief Act of 1940, with respect to the modification, termination or cancellation of any written contract, executed during or after the period of military service of the person concerned, nevertheless, since the last named Act superseded from the date of its enactment, namely, October 17, 1940, its earlier counterpart, namely, the Soldiers' and Sailors' Civil Relief Act of 1918, and since the benefits of this 1918 Act were, as we have seen, expressly extended to the beneficiaries of the Army Reserve and Retired Personnel Service Law of 1940, it is reasonable to conclude that Congress, in passing this last named Act, did not intend to make the status of beneficiaries thereunder, with respect to written agreements entered into by them during or after their period of military service, any different from what had impliedly been the status of corresponding beneficiaries under the Soldiers' and Sailors' Civil Relief Act of 1918, and had expressly been the status of corresponding beneficiaries under the Soldiers' and Sailors' Civil Relief Act of 1940.

It is to be noted that the Army Reserve and Retired Personnel Service Law of 1940 was enacted August 27, 1940, and the Soldiers' and Sailors' Civil Relief Act just a few weeks later, namely, on October 17, 1940. But the Section of the later Act, Sec. 107, 50 U.S.C.A.Appendix, § 517, which, as we have seen, relates to the modification, termination or cancellation of written contracts executed during or after

the period of military service of the person concerned, was added by amendment of October 6, 1942, and the Report of the House Committee on Military Affairs respecting the various amendments of October 6, 1942, contains the following significant statement (House Report No. 2198, 77th Congress, Second Session, 50 Appendix): "Section 107 clarifies the right of a person in military service to make certain arrangements with respect to his contracts and obligations, but requires that such arrangement must be in writing."

■ The right of re-employment upon which the present plaintiff is insisting, by virtue of the statute, is, it must be remembered, in derogation of the common law, and therefore must be strictly construed and not extended by implication or by liberal interpretation. In short, the integrity of contracts, the basic principle that their mutuality, and that therefore the rights of *both* or *all* contracting parties, must be zealously guarded, are things not lightly to be cast aside under our Constitutional form of Government, in time of War any more than in time of Peace.

Unquestionably, those in the armed forces of our country should be relieved, as fully as possible, from harassment and injury with respect to their civil affairs during their terms of service, thus enabling them to more completely and successfully devote all of their energies to the war needs of the Nation. Such is an essential part of their just reward for their service and sacrifice. Such is the commendable object underlying the Act upon which the present plaintiff relies. But neither this statute, nor any related war time legislation, gives evidence of any intent to take away from the soldier or sailor his capacity to act, if he so desires, as a free agent, as he might have done before entering the service. Indeed it would be stultifying to him to do so. It would be tantamount to a declaration that once in the armed forces, our citizens become, in effect, incompetent to contract or to be held to any other normal non-military responsibilities, and what is worse, it would encourage dishonest practices which have no place in our law. It would say to the civilian, "You deal at your peril with all those in the Armed Forces."

For the foregoing reasons, the defendant's motion to dismiss the bill of complaint must be granted. It therefore becomes unnecessary to consider the question of the validity of the provisions of the Act herein review, as would be the case were the Court required to find that their effect is that for which the plaintiff has contended, or had the plaintiff not entered into the supplementary agreement of December 14, 1940. Likewise, it becomes unnecessary to consider any of the other questions raised by the motion to dismiss. We rest our decision squarely upon the finding that the Act neither expressly nor by implication gives support to plaintiff's position.